IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| CARLENE LOCKLEAR, Personal Representative of the ESTATE OF MICHAEL LOCKLEAR, Deceased, | ) ) ) | Case No. 1:10 cv 164 Jury Trial Demanded |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| MYLAN INC., MYLAN PHARMACEUTICALS INC., and MYLAN TECHNOLOGIES INC., | ) ) ) ) | |
| Defendants. | ) | |

**MYLAN DEFENDANTS' MOTION TO TRANSFER
PURSUANT TO 28 U.S.C. §1404**

AND NOW, come the Defendants, Mylan Inc., Mylan Pharmaceuticals Inc. ("MPI") and Mylan Technologies Inc. ("MTI") (collectively referred to as "Mylan" or the "Mylan Defendants"), by and through their counsel, Clem C. Trischler, Esquire and Pietragallo Gordon Alfano Bosick & Raspanti, LLP and files this Motion to Transfer.  Pursuant to 28 U.S.C. §1404, the Mylan Defendants submit that the transfer of this action is warranted because:

(a) Plaintiff does not reside, nor did Plaintiff's decedent reside, in West Virginia; and

(b) This cause of action did not arise in West Virginia, but rather arose in North Carolina, the State in which Plaintiff's decedent resided prior to his death.

Under the circumstances, this Court should transfer this litigation to the United States District Court for the Eastern District of North Carolina in the interests of justice, and for the convenience of the parties and witnesses.  In further support of this Motion, the Mylan Defendants submit the following:

1. This litigation involves a wrongful death claim brought on behalf of Plaintiff, a citizen of the State of North Carolina, who claims that her son, Michael Locklear ("Decedent"),

1905954v1

died from a fentanyl overdose while using a 50 mcg/hr Mylan Fentanyl Transdermal System ("MFTS") patch prescribed by Dr. Francis Corrigan and Jerri Patterson, ANP-C, a Pinehurst, North Carolina-based physician and Nurse Practitioner.  *See* Plaintiff's Complaint, ¶¶ 1, 13.  A copy of Plaintiff's Complaint is attached hereto as Exhibit "A."

    2.    Plaintiff, Charlene Locklear, is a resident of North Carolina and all of the relevant activities upon which this case is based as well as the majority of the non-party fact witnesses reside in the Eastern District of North Carolina.  *See* Exhibit "A" and Plaintiff's Rule 26(a) Disclosure and relevant documents, a copy of which is attached hereto as Exhibit "B."

    3.    At the time of his death, Decedent was a citizen of Pembroke, North Carolina.  *See* Exhibit "A," ¶1 and Exhibit "B."

    4.    The records establish that Decedent was issued his prescription for the MFTS by Dr. Francis Carrigan and Jerri Patterson, ANP-C, a physician and nurse practitioner located in Pinehurst, North Carolina; that Decedent filled his prescription at the Kerr Pharmacy in Pembroke, North Carolina; and that Decedent died at his home located in Littleton, North Carolina, on or about September 29, 2009.  *See* Exhibits "A" and "B."

    5.    Because this claim is being brought on behalf of a non-resident on a cause of action which arose outside of the State of West Virginia, the Mylan Defendants respectfully submit that this Honorable Court should transfer this action to the United States District Court for the Eastern District of North Carolina so that it may be litigated where the case truly belongs - North Carolina.

    6.    Moreover, transferring this matter to the Eastern District of North Carolina would be consistent with the prior rulings of the Honorable Joseph R. Goodwin, Chief Judge of the United States District Court for the Southern District of West Virginia, in <u>Gardner v. Mylan Inc., et al.</u>, 2010 WL 2595114 (S.D.W.Va. 2010); <u>Leonard v. Mylan Inc., et al.</u>, 718 F.Supp.2d 714

(S.D.W.Va. 2010); Arnett v. Mylan Inc., et al., 2010 WL 3220341 (S.D.W.Va. 2010); Booker v. Mylan Inc., et al., Case No.: 1:10-CV-2958; Reed v. Mylan Inc., et al., Case No.: 3:10-CV-00350; Sanner v. Mylan Inc., et al., 2010 WL 3294370 (S.D.W.Va. 2010); and Urich v. Mylan Inc., et al., 2010 WL 3359462 (S.D.W.Va. 2010). (The opinions issued by Judge Goodwin are attached as Exhibits "C" through "I," respectively.) Specifically, the Court held that the transfer issues in Gardner were indistinguishable from those in the aforementioned cases and "[o]ther than the incorporation of two of the defendants in West Virginia, there are no West Virginia interests in this case." Gardner, 2010 WL 2595114 at *3, Exhibit "C."

> I. **THIS COURT SHOULD DECLINE TO EXERCISE JURISDICTION AND TRANSFER THIS MATTER PURSUANT TO 28 U.S.C. § 1404 FOR THE CONVENIENCE OF THE PARTIES AND WITNESSES.**

7. Simply put, this and other recent filings in the Northern District of West Virginia do not represent the first attempt by Plaintiff's counsel to forum shop. Judge Goodwin transferred seven (7) similar cases to the home jurisdiction of the plaintiffs. *See*, Exhibits "C" through "I." Having been kicked out of the Southern District of West Virginia because West Virginia has no meaningful interest in these fentanyl cases, Plaintiff's counsel has now moved up I-79 to the Northern District of West Virginia.

8. However, whether filed in Clarksburg or Charleston, the rationale of Judge Goodwin still applies to the case of an out-of-state plaintiff bringing a cause of action that arose outside the state of West Virginia for injuries allegedly resulting from a product manufactured outside the State of West Virginia do not belong in this forum.

9. 28 U.S.C. § 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

10. Plaintiff avers in her complaint that she is a citizen of the State of North Carolina. Her Rule 26(a) Disclosure further identifies Decedent's place of residence as Pembroke, North Carolina. *See* Exhibit "A," ¶1 and Exhibit "B."

11. Plaintiff commenced this wrongful death suit asserting, *inter alia*, various strict liability claims against Mylan Defendants. *See* Exhibit A.

12. In support of her choice of venue, Plaintiff asserts that the Mylan Defendants' design, manufacture, market and distribute the MFTS in this state. *See* Exhibit "A," ¶7.

13. A review of the facts, however, reveals that Plaintiff's allegations are incorrect and this case has a much greater connection to the State of North Carolina than to the State of West Virginia. Among other things:

    a. The Decedent was a resident of North Carolina. *See* Exhibit "A," ¶1;

    b. The MFTS is an FDA approved drug product that is available only by prescription;

    c. The MFTS is manufactured by MTI at the company's production facilities located in St. Albans, Vermont. Relevant batch records and quality control records regarding the manufacture and inspection of the MFTS are maintained in Vermont. *See* Brian Cuthbertson Affidavit, ¶8, a copy of which is attached hereto as Exhibit "J;"

    d. Once the MFTS is manufactured and released for distribution, it is shipped from Vermont to MPI's facility in Greensboro, North Carolina. *See* Exhibit "J," ¶ 10. From there, MPI distributes the MFTS through a network of wholesalers and distributors;

    e. After the MFTS was distributed to North Carolina, it was prescribed to Decedent by Dr. Frances Corrigan, a North Carolina licensed and based physician and Jerri Patterson, a North Carolina licensed and based nurse practitioner. *See*, Exhibit "B;"

    f.  Decedent filled the prescription at Kerr Pharmacy located in Pembroke, North Carolina and used the MFTS in North Carolina. *See* Exhibit "B;"

    g.  Decedent died at his home in Pembroke, North Carolina. *See* Exhibit "B;"

    h.  Decedent's death was investigated by the Robeson County Sheriff's Office and the North Carolina Office of the Chief Medical Examiner. *See* Exhibit "B;"

    i.  The cause, manner and circumstances surrounding the death of Mr. Locklear will be disputed issues at trial. In this case, Dr. John Butts of the North Carolina Office of the Chief Medical Examiner, authored an autopsy Report in which he determined that the cause of death was fentanyl intoxication." *See* Exhibit "B.";

    j.  Moreover, Mylan will be exploring and developing information related to the decedent's medical history. Pursuant to Plaintiff's Rule 26(a) Initial Disclosure, the decedent has an extensive medical history including, but not limited to, paraplegia secondary 2006 motor vehicle accident, deep vein thrombosis, asthma, anxiety, chronic thoracic, spine and neck and shoulder pain, and MRSA associated with a skin ulcer. He was treated by Francis Corrigan, Glenn R. Harris and nurse practitioner Jerri Patterson, as well as Native Angels Homecare Agency, Southeastern Regional Medical Center, Durham Regional Hospital and Scotland Regional Hospital, all of which are located in and/or around the Eastern District of North Carolina. *See* Exhibit "B."

    14.  Simply put, this cause of action involves claims of product defect relating to a prescription drug product that was prescribed by a North Carolina physician to a North Carolina patient. Plaintiff's cause of action, as alleged, arose in North Carolina where the MFTS was

prescribed, obtained, utilized and, ultimately where Decedent died.[1] See Leonard, *supra;* Gardner, *supra;* Arnett, *supra;* Booker, *supra;* Reed, *supra;* Sanner, *supra;* and Urich, *supra.* *See* Exhibits "C" through "I," respectively.

15. The only "connection" which this case has to the State of West Virginia is that MPI is a West Virginia based corporation, and MTI is organized under West Virginia law. However, since this product was manufactured in Vermont and distributed by MPI from North Carolina, there is no doubt that the cause of action arose outside of the State of West Virginia and that the interests of justice and the convenience of the parties suggest that this Court decline to exercise jurisdiction.

16. As Judge Goodwin has observed in connection with earlier attempts by Plaintiffs' counsel to forum shop fentanyl products liability cases, the Mylan Fentanyl Transdermal System was not manufactured in West Virginia and, therefore, "West Virginia's interests [in this case] are few." Arnett, 2010 WL 3220341 at *2. *See* Exhibit "E."

      **II.    THE FACTORS WHICH THE COURT MUST CONSIDER IN EVALUATING WHETHER TO TRANSFER THIS ACTION PURSUANT TO 28 U.S.C. §1404(a) WEIGH IN FAVOR OF TRANSFERRING THIS CASE TO NORTH CAROLINA.**

17. The courts have long held that "[t]o resolve a motion to transfer venue, a district court must 'weigh in the balance a number of case-specific factors.'" Vass v. Volvo Trucks North America, Inc., 304 F.Supp.2d 851 (S.D.W.Va. 2004) quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). *See also* VanDusen v. Barrack, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

---

[1] The foregoing notwithstanding, the Mylan Defendants specifically deny that the MFTS was defective in any manner and further deny that the MFTS was a contributing factor in or was the proximate cause of Decedent's death.

6

18.   It is well settled that "[d]istrict courts have greater discretion to transfer venue under 28 U.S.C. §1404 (a) than to dismiss on the grounds of forum non conveniens." Vass, 304 F.Supp.2d at 857 citing AFA Enter. Inc. v. Am. States Ins. Co., 842 F.Supp. 902, 908 (1994) citing in turn Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

19.   The "[f]actors commonly considered in ruling on a transfer motion include: (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice. Vass, 304 F.Supp.2d at 857 citing AFA, 842 F.Supp. at 909 (citations omitted).

      **A.**    ***THE SOURCES OF PROOF IN THIS CASE ARE MORE READILY ACCESSIBLE IN NORTH CAROLINA.***

20.   A review of Plaintiff's Rule 26(a) Initial Disclosure establishes that the vast majority of the fact witnesses identified by Plaintiff in this case are located in the State of North Carolina. Plaintiff identified the following as having relevant information with respect to her claims:

    a.   John D. Butts, MD, Molly Hump, Tracy Gurnsey, Sam Simmons, Bill Holloman, Office of the Chief Medical Examiner, Chapel Hill, NC;

    b.   Robeson County Sheriff's Office, Lumberton, NC;

    c.   Robeson County EMS, Lumberton, NC;

    d.   Frances Corrigan, MD, Jerri L. Patterson, ANP-C, Pinehurst, NC;

    e.   Glenn R. Harris, MD, Laurinburg, NC;

    f.   Kerr Pharmacy, Pembroke, NC;

      g.      Native Angels Homecare Agency, Lumberton, NC;

      h.      Southeast Regional Medical Center, Lumberton, NC;

      i.      Durham Regional Hospital, Durham, NC;

      j.      Scotland Memorial Hospital, Laurinburg, NC;

      k.      LabCorp, Burlington, NC;

      l.      Duke University Medical Center, Durham, NC.

21.    To the extent that Plaintiff also identifies numerous individuals employed by the Mylan Defendants as potential witnesses, the Mylan Defendants submit that the individuals with the most knowledge regarding the design and manufacture of the MFTS which Plaintiff claims was defective, are not located in West Virginia.

22.    A review of the Mylan employees identified as being affiliated with the Mylan Defendants establishes that very few of these individuals – Peter Bottini, Phar.D.[2], Michael Houghton, Andrea Miller, Ron Selders and Russ Rackley – reside in West Virginia.

23.    Moreover, as acknowledged by Plaintiff's counsel during the scheduling conference, the majority of these individuals have already been deposed in other cases and the parties have agreed that the prior depositions can be utilized in the subsequent cases such as this; a fact which further diminishes the already sparse contacts with the State of West Virginia.

24.    Conversely, several of the individuals identified by Plaintiff, including William Brochu, Ph.D., Jeff Lloyd, Mark Batchelder, Katie Coy, Todd Gingrass, John Hango and Mike Sturm, reside and work in St. Albans, Vermont; John O'Donnell, Ph.D., resides in the State of Florida; Gordon Flynn, Ph.D., lives in Ann Arbor, Michigan; Robert Potter resides in Providence, Rhode Island and Ken Miller resides in Pennsylvania.

---

[2] Dr. Bottini no longer works for the Mylan Defendants and no longer resides in West Virginia. In fact, Dr. Bottini now lives and works in New Jersey.

25. In an attempt to bolster his claim that West Virginia has some nexus with Plaintiff's claims, he has identified numerous individuals as potential witnesses, ranging from Mylan Inc.'s President to the fentanyl line workers (all of whom are located in Vermont), regardless of whether or not they may have any relevant information regarding Plaintiff's allegations.

26. Simply put, the undeniable fact is that virtually all the non-party fact witnesses reside in Colorado. *See* Exhibit "B." The majority of the Mylan witnesses responsible for the design and development of the product reside outside of West Virginia. But more than that, the fact that Mylan has employees in West Virginia does not in any way defeat this motion. This is particularly true given Mylan's long standing agreement to voluntarily produce any employee with relevant information for deposition without necessity of subpoena.[3]

27. Where none of the non-party witnesses identified in Plaintiff's Rule 26(a) Disclosure including, Decedent's treating physicians, law enforcement officers, coroner, and the first responders, are subject to the subpoena powers of this Court, transfer is warranted so that Defendants will have the ability to present these critical causation witnesses live at the time of trial.

28. To the extent that Plaintiff intends to introduce any testimony from Decedent's prior employers and/or educators, it is expected that these individuals and/or entities are also located in North Carolina and not West Virginia.

29. Clearly, the overwhelming amount of evidence relevant to Plaintiff's claims is located in North Carolina and the relative availability of that evidence in North Carolina weighs strongly in favor of transferring this case to North Carolina.

---

[3] Of course, this offer is subject to the trial court's ruling on the scope of discovery. Mylan is not, by this motion, agreeing that Plaintiff can or should be entitled to depose the company president or every single line employee. However, subject to rulings or agreement on the scope of discovery, Mylan does agree to produce all employees at convenient dates and locations without subpoena.

      **B.    *NORTH CAROLINA IS A MORE CONVENIENT FORUM FOR THE PARTIES AND WITNESSES.***

30.    Transferring this matter to North Carolina will be more convenient for the parties and witnesses as Plaintiff is a North Carolina resident and the vast majority of fact witnesses are located in the State of North Carolina.

31.    In contrast, there is not a single non-party witness residing in West Virginia.

32.    Accordingly, it would be much more convenient to try this matter in North Carolina as the relevant non-party witnesses could attend the trial without the need for excessive travel or other accommodations and without reducing the proceedings to a trial by deposition.

      **C.    *THE COST OF OBTAINING WITNESSES IN NORTH CAROLINA WILL BE LESS THAN IF THIS MATTER IS TRIED IN WEST VIRGINIA.***

33.    As the Mylan Defendants do not have the availability to compel the non-party witnesses to appear in West Virginia for trial, the Mylan Defendants will be forced to expend additional sums of money to take the videotape depositions for use at trial of almost every witness that may have any knowledge regarding this matter.

34.    If this case is tried in West Virginia, the parties will also be required to expend additional time and costs preparing for the depositions of the out-of-state witnesses as they must be taken for use at trial and will not be the general fact depositions usually obtained in cases such as this.

35.    Simply put, each non-party witness may need to be deposed twice; once for discovery purposes and once for use at trial.

        **D.**    ***THIS COURT DOES NOT HAVE THE POWER TO COMPEL THE ATTENDANCE OF THE OUT-OF-STATE WITNESSES.***

36.    It is beyond dispute that the majority, if not all, of the fact witnesses reside in the State of North Carolina or within the subpoena range of the Eastern District of North Carolina.

37.    In contrast, there is not a single <u>non-party</u> witness identified by Plaintiff in this case who resides in West Virginia or within the subpoena radius of this Honorable Court.

38.    Trial in this forum will result in a substantial injustice to the parties since this Court cannot compel fact witnesses residing in North Carolina to appear and testify in the United States District Court for the Northern District of West Virginia.

39.    The United States District Court for the Eastern District of North Carolina does, however, have the ability to compel the non-party, fact witnesses to attend and testify at the trial if this matter is transferred to North Carolina.

        **E.**    ***NORTH CAROLINA HAS A SUBSTANTIAL INTEREST IN HAVING THIS MATTER DECIDED IN NORTH CAROLINA.***

40.    Transferring this case is warranted as North Carolina has a substantial interest in having this matter resolved in its judicial system.

41.    When presented with a choice-of-law question, a federal court sitting in diversity must sit in the place of the state court and apply the forum state's choice-of- law rules. <u>Klaxon Co. v. Stentor Electric Mfg. Co.</u>, 313 U.S. 487, 496-97 (1941); <u>Penn Coal Corp. v. William H. McGee and Co., Inc.</u>, 903 F.Supp. 980, 983 (S.D.W.Va. 1995).

42.    It is well settled that in a tort action, such as this, West Virginia applies the law of the place of injury ("*lex loci delicti*"). <u>Chemtall, Inc. v. Madden</u>, 607 S.E.2d 282 (W.Va. 2004).

43. As Plaintiff readily admits that Decedent was treated in North Carolina; was prescribed a fentanyl patch in North Carolina; utilized the patch in North Carolina and died in North Carolina, North Carolina law should be applied to the case *sub judice*.[4]

44. North Carolina has a heightened interest in deciding a case involving the death of a North Carolina citizen after being prescribed a prescription drug in North Carolina by a physician licensed to practice medicine in the State of North Carolina.

45. In order to avoid unnecessary problems with the interpretation of North Carolina law and to avoid the unfairness of burdening West Virginia citizens with jury duty in a case which has no meaningful connection to this state, the Mylan Defendants submit that this factor weighs in favor of transfer.

### F. IN THE INTEREST OF JUSTICE THIS CASE MUST BE TRANSFERRED TO NORTH CAROLINA.

46. The Mylan Defendants submit that allowing this claim to proceed in the State of West Virginia would result in a substantial injustice to everyone involved.

47. As previously stated, if this case remains in West Virginia, the Mylan Defendants will be forced to expend substantial amounts of time and money that would otherwise be unnecessary and will be forced to try this matter by videotape thereby causing substantial injustice to the Mylan Defendants.

48. The citizens of North Carolina will also suffer injustice if this case, which is factually predicated upon acts that occurred primarily in North Carolina, is tried to a West

---

[4] It is expected that Plaintiff will argue that West Virginia law applies to the failure to warn claim. *See*, Vitatoe v. Mylan Pharmaceuticals, Inc., 696 F.Supp.2d 599 (N.D.W.Va. 2010); Woodcock v. Mylan Inc., 661 F.Supp.2d 802 (S.D.W.Va. 2009). The Mylan Defendants submit that these cases were erroneously decided and the federal court's prediction that the Supreme Court of West Virginia would allow a non-resident to re-write the law that controls this cause of action simply by filing the case in West Virginia is a flawed one. Nevertheless, even if West Virginia law applies to the warnings claim, a fact Mylan does not concede, North Carolina law will control every other aspect of the liability and damages claim and this factor still mitigate in favor of transfer.

Virginia jury. Clearly, the citizens of North Carolina have a greater interest in resolving this matter than do the citizens of West Virginia.

49. In <u>Arnett</u>, *supra*, Judge Goodwin held that "Oklahoma interests include having one of its citizens' rights vindicated, as well as protecting its other citizens from potentially harmful pharmaceutical drugs. Conversely, West Virginia's interests are few." <u>Id</u>. at *2. *See* Exhibit "E."

50. Concomitantly, the citizens of West Virginia should not be forced to bear the burden of deciding a case that has no factual nexus with this State. Especially given Judge Goodwin's prior rulings that "West Virginia has few, if any, interest in these factually similar cases." *See e.g.* <u>Urich v. Mylan Inc.</u>, 2010 WL 3359462 at *3. *See* Exhibit "I."

51. The North Carolina courts will be divested of their right to decide a cause of action that unequivocally arose in the State of North Carolina, while this Court will be burdened with deciding a matter that has absolutely no factual or causal nexus with the State of West Virginia.

### III. **CONCLUSION**

52. For all of the reasons stated herein and in the Defendants' Brief in Support of this Motion to Transfer, the Mylan Defendants submit that the interests of justice dictate that this Honorable Court should decline jurisdiction and should transfer this action to the United States District Court for the Eastern District of North Carolina.

WHEREFORE, based upon the foregoing and the arguments set forth in their Brief in Support of Transfer, Mylan Inc., Mylan Pharmaceuticals Inc. and Mylan Technologies Inc. respectfully requests that this Honorable Court transfer this action to the United States District Court for the Eastern District of North Carolina in the interest of justice and convenience of all involved.

Respectfully submitted:

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP


By: */s/ Clem C. Trischler*
    Clem C. Trischler, Esquire
    WV ID No. 5267
    Ryan J. King, Esquire
    WV ID No. 8818
    One Oxford Centre, 38th Floor
    Pittsburgh, PA 15219
    Telephone: 412-263-2000
    Facsimile: 412-263-4246
    Email: CCT@pietragallo.com
    Email: RJK@pietragallo.com

**Attorney for Defendants, Mylan Inc., Mylan Technologies Inc., and Mylan Pharmaceuticals Inc.**

## **CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the within pleading has been served upon counsel of record by:

|   |   |
|---|---|
| _____ | Hand Delivery |
| _____ | First Class Mail, Postage Prepaid |
| _____ | Certified Mail, Return Receipt Requested |
| _____ | Fax Transmission |
| _____ | Overnight Mail |
|   X   | Electronic Notice by ECF |
| _____ | E-Mail |

at the following addresses and/or numbers:

Michael E. Heygood, Esquire
James Craig Orr, Jr., Esquire
Eric D. Pearson, Esquire
Charles W. Miller, Esquire
Heygood Orr & Pearson
2331 W. Northwest Highway, 2nd Floor
Dallas, TX  75220

Kathryn Reed Bayless, Esquire
Bayless Law Firm, PLLC
1607 W. Main Street
Princeton, WV  24740

           PIETRAGALLO GORDON ALFANO
           BOSICK & RASPANTI, LLP

          By: */s/ Clem C. Trischler*
             CLEM C. TRISCHLER, ESQUIRE
             Attorney for Defendants

Date:  January 21, 2011

1905954v1