IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| CARLENE LOCKLEAR, Personal Representative of the ESTATE OF MICHAEL LOCKLEAR, Deceased, | ) Case No. 1:10 cv 164 )<br>) Jury Trial Demanded |
| Plaintiff, | ) ) |
| vs. | ) ) |
| MYLAN INC., MYLAN PHARMACEUTICALS INC., and MYLAN TECHNOLOGIES INC., | ) ) ) ) |
| Defendants. | ) |

## MYLAN DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO TRANSFER PURSUANT TO 28 U.S.C. §1404

AND NOW, come the Defendants, Mylan Inc., Mylan Pharmaceuticals Inc. ("MPI") and Mylan Technologies Inc. ("MTI") (hereinafter collectively referred to as "Mylan" or the "Mylan Defendants"), by and through their counsel, Clem C. Trischler, Esquire and Pietragallo Gordon Alfano Bosick & Raspanti, LLP, and file this Brief in Support Motion to Transfer Pursuant to 28 U.S.C. §1404. The Mylan Defendants submit that the transfer of this action is warranted because of the following:

### INTRODUCTION

This litigation involves a wrongful death claim brought by a citizen of the State of North Carolina alleging that her husband, Michael Locklear ("Decedent"), also a North Carolina resident died from a fentanyl overdose while allegedly using a 50 mcg/hr Mylan Fentanyl Transdermal System ("MFTS") patch prescribed by her North Carolina-based physician, Francis Corrigan, M.D. and Jerri Patterson, ANP-C.  *See* Exhibit A, ¶¶ 1, 13 attached to Defendants' Motion to Transfer.  Plaintiff, Carlene Locklear, is a resident of Englewood, North Carolina as

was her husband at the time of his death. Pembroke, North Carolina is located in the United States District for the Eastern District of North Carolina. The undisputed facts in this case establish that at the time of his death, Decedent was a citizen of the State of North Carolina. It is further uncontested that Decedent was issued his prescription for the MFTS by Dr. Corrigan, a physician located in Pinehurst, North Carolina; that Decedent filled her prescription at Kerr Pharmacy in Pembroke, North Carolina; and that Decedent died at his home located in Pembroke, North Carolina.[1] Thus, we have a North Carolina Plaintiff pursing a strict products liability claim alleging that her husband died due to a product that was prescribed, dispensed and used in North Carolina.

     Upon receipt of Plaintiff's Rule 26(a) Initial Disclosures, it became readily apparent, notwithstanding Plaintiff's claims to the contrary, that this action should have been filed in the United States District Court for the Eastern District of North Carolina and not in West Virginia. The vast majority, if not all of the non-party witnesses identified by Plaintiff that will offer testimony and evidence in support of Plaintiff's claims live and/or are located in the State of North Carolina.

     Conversely, West Virginia's contacts with this case are tangential at best. The Mylan Defendants do not dispute that MTI and MPI were formed pursuant to West Virginia law. The Mylan Defendants also admit that MPI's principal office is located in Monongalia County, West Virginia. Contrary to the Plaintiff's allegations, none of the activities giving rise to the Plaintiff's wrongful death occurred in the State of West Virginia. In fact, The United States District Court for the Northern District of West Virginia has repeatedly acknowledged that West Virginia has few, if any, interests in factually similar MFTS cases. *See* <u>Gardner v. Mylan Inc., et</u>

---

[1] The foregoing notwithstanding, the Defendants deny that the MFTS was defective in any manner and, further deny, that the MFTS was a contributing factor and/or the proximate cause of Decedent's death.

al., 2010 WL 2595114 (S.D.W.Va. 2010); Leonard v. Mylan Inc., et al., 718 F.Supp.2d 714 (S.D.W.Va. 2010); Arnett v. Mylan Inc., et al., 2010 WL 3220341 (S.D.W.Va. 2010); Booker v. Mylan Inc., et al., Case No.: 1:10-CV-2958; Reed v. Mylan Inc., et al., Case No.: 3:10-CV-00350; Sanner v. Mylan Inc., et al., 2010 WL 3294370 (S.D.W.Va. 2010); and Urich v. Mylan Inc., et al., 2010 WL 3359462 (S.D.W.Va. 2010). In each of the aforementioned cases, the Honorable Joseph R. Goodwin, Chief Judge for the United States District Court for the Southern District of West Virginia, granted the Mylan Defendants' Motion to Transfer pursuant to 28 U.S.C. §1404.

As set forth in the Affidavit of Brian Cuthbertson, MTI developed and manufactured the MFTS in St. Albans, Vermont. *See* Cuthbertson Affidavit attached to Defendant's Motion to Transfer. Once the MFTS is manufactured, it is shipped to MPI's facility located in Greensboro, North Carolina, where it is distributed through a network of wholesalers and distributors. Id. None of the activities upon which Plaintiff bases his wrongful death claim occurred in the State of West Virginia. That is, the MFTS allegedly used by the Decedent was not manufactured, distributed or sold in West Virginia. Even assuming, *arguendo*, that Plaintiff is correct and the Mylan Defendants' decision making processes give rise to her claims, this case warrants transfer from the Northern District of West Virginia as the factors which the Court must consider greatly outweigh any activities that may have taken place in Morgantown. Thus, for the convenience of the witnesses and in the interest of justice, this matter should be transferred to the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. §1404.

Moreover, as detailed in the Defendants' Motion to Transfer, this case does not represent the first attempt by Plaintiff's counsel to forum shop these fentanyl products liability cases. Transferring this matter is consistent with the prior rulings from the United States District Court

for the Southern District of West Virginia in Gardner v. Mylan Inc., et al., 2010 WL 2595114 (S.D.W.Va. 2010); Leonard v. Mylan Inc., et al., 718 F.Supp.2d 714 (S.D.W.Va. 2010); Arnett v. Mylan Inc., et al., 2010 WL 3220341 (S.D.W.Va. 2010); Booker v. Mylan Inc., et al., Case No.: 1:10-CV-2958; Reed v. Mylan Inc., et al., Case No.: 3:10-CV-00350; Sanner v. Mylan Inc., et al., 2010 WL 3294370 (S.D.W.Va. 2010); and Urich v. Mylan Inc., et al., 2010 WL 3359462 (S.D.W.Va. 2010). In each of these cases, Judge Goodwin found that West Virginia was not a convenient forum for litigating claims of non-West Virginia citizens alleging defects in the MFTS where all of the non-party fact witnesses reside outside West Virginia and the cause of action accrued elsewhere. *See* generally, Exhibits C through I of the Motion to Transfer. Moving these types of lawsuits up the I-79 corridor does not convert West Virginia into a convenient forum and this case should be transferred to North Carolina – the state where Plaintiff resides, where the injury occurred and where the cause of action arose.

This case is the latest in a long line of efforts by Plaintiff's counsel to forum shop. First, they filed fentanyl lawsuits in the Circuit Court of Monongalia County on behalf of foreign plaintiffs [Mace, Garner and Pope]. Judge Clawges dismissed each case under the West Virginia *forum non conveniens* doctrine. W.Va. Code §56-1-1 and directed Plaintiffs to re-file in the jurisdiction where each Plaintiff resided and where the cause of action arose. Rebuffed by Judge Clawges, Plaintiff's counsel then moved to the Southern District of West Virginia and filed a series of lawsuits asserting wrongful death claims on behalf of non-residents alleging that their respective decedents died as a result of an alleged deficiency in the MFTS. *See*, Gardner v. Mylan Inc., et al., 2010 WL 2595114 (S.D.W.Va. 2010); Leonard v. Mylan Inc., et al., 718 F.Supp.2d 714 (S.D.W.Va. 2010); Arnett v. Mylan Inc., et al., 2010 WL 3220341 (S.D.W.Va. 2010); Booker v. Mylan Inc., et al., Case No.: 1:10-CV-2958; Reed v. Mylan Inc., et al., Case

No.: 3:10-CV-00350; Sanner v. Mylan Inc., et al., 2010 WL 3294370 (S.D.W.Va. 2010); and Urich v. Mylan Inc., et al., 2010 WL 3359462 (S.D.W.Va. 2010).

Judge Goodwin transferred each and every one of these cases out of West Virginia observing that West Virginia had little interest in controversies brought by non-residents for injuries occurring out of the state.

Undaunted, Plaintiff has now moved north and asks this Court to do what Judge Goodwin and Judge Clawges refused – permit non-residents to pursue claims in distant and inconvenient forum. However, as Judge Goodwin ruled:

> Justice is best served by having this case proceed in the [Decedent's home state]. The plaintiff's choice of forum is substantially outweighed by the fact that absolutely no facts of significance in this case occurred in this district. Transfer is necessary to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612-616 (1964).

See Urich, 2010 WL 3359462 at *2.

Simply put, Clarksburg is no different than Morgantown or Charleston. These cases are more properly litigated in other forums and Mylan requests that this Honorable Court refuse Plaintiff's continued attempts at forum shopping and grant Mylan's Motion to Transfer pursuant to 28 U.S.C. §1404(a).

## STANDARD

28 U.S.C. §1404(a) provides, "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." It is well settled that "[d]istrict courts have greater discretion to transfer venue under 28 U.S.C. §1404(a) than to dismiss on the grounds of *forum non conveinens*." Vass v. Volvo Trucks, North America, Inc., 304 F.Supp.2d 851 (S.D.W.Va. 2004),

*citing*, AFA Enter. Inc. v. American States Insurance Company, 842 F.Supp. 902, 908 (1994), *citing in turn*, Piper Aircraft Company v. Reyno, 454 U.S. 235, 253, 102, S.Ct. 252, 70 L.Ed.2 419 (1981). The West Virginia courts have long held that, "[t]o resolve a motion to transfer venue, the district court must 'weigh in the balance a number of case-specific factors.'" Vass, 304 F.Supp.2d at 857, *quoting* Stewart Org., Inc. v. Richo Corp, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) *quoting* in turn, Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The "[f]actors commonly considered in ruling on a transfer motion include: (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice. Vass, 304 F.Supp.2d at 857 citing AFA, 842 F.Supp. at 909 (citations omitted).

It is evident that this matter could and should have been filed in the United States District Court for the Eastern District of North Carolina. More importantly, the factors cited above weigh in favor of transferring this matter to the United States District Court for the Eastern District of North Carolina as will be discussed more fully below.

> I. **THE DETERMINING FACTORS CONSIDERED WHEN EVALUATING WHETHER TO TRANSFER THIS MATTER WEIGH IN FAVOR OF TRANSFERRING THIS LITIGATION TO NORTH CAROLINA**.
>
>> A. *THE SOURCES OF PROOF IN THIS CASE ARE MORE READILY ACCESSIBLE IN THE STATE OF NORTH CAROLINA.*

In Scott v. Life Investors Insurance Company of America, 2007 W.L. 3390012 (N.D.W.Va. 2007), the United States District Court for the Northern District of West Virginia performed a comprehensive review of 28 U.S.C. §1404(a). Judge Maxwell's analysis in Scott,

supra, is directly on point in this matter.  In Scott, a South Carolina resident was killed in an automobile accident in Hollyhill, South Carolina.  The decedent died immediately from the injuries sustained in the accident and the certificate of death indicated that the decedent died as a result of blunt force trauma to the head and neck.  Defendants, decedent's insurance carriers, refused to pay the death benefits available under decedent's insurance policies alleging that the accident was the direct and proximate result of decedent's driving while intoxicated.  Decedent's widow, a West Virginia resident, subsequently filed suit in West Virginia.

In considering whether or not to transfer the case from the Northern District of West Virginia to the District of South Carolina, the Scott Court analyzed the seven factors identified in Alpha Welding and Fabricating, Inc. v. Heller, Inc., 837 F.Supp. 172 at 175 (S.D.W.Va. 1993). See also Vass, supra; AFA, supra.  In support of their motion to transfer, defendants argued that because the case would be decided upon whether the decedent's death was caused by operating a vehicle while under the influence, the testimony of the coroner, the toxicologist and the investigating law enforcement officers - all of whom were located in the State of South Carolina - would be required to establish or refute facts relative to the decedent's intoxication at the time of the accident.  Defendants also argued that the individuals identified in plaintiff's Rule 26(a)(1) disclosures included the individuals from the coroner's office located in South Carolina, the toxicologist located in South Carolina and the law enforcement personnel located in South Carolina.  Defendants further argued that Plaintiff identified only two other potential witnesses located in the State of West Virginia.  In analyzing these factors, the district court ruled that, "because this action turns on whether the decedent's death was caused by his operating a motor vehicle while intoxicated, the testimony of the coroner, toxicologist and investigating officers, all

of whom are located in the State of South Carolina, will be essential to resolving this issue." Scott, 2007 W.L. 3390012 at *5.

Here, just as in Scott, supra, it is evident that Plaintiff's case turns upon the facts and circumstances of Decedent's medical history, his course of treatment, his prescribing history, the circumstances of his death and the investigation into the same; all of which occurred in North Carolina. In order to prove as much, the testimony of the Plaintiff, the medical examiner, the toxicologist the investigating law enforcement officers, the Decedent's treating physicians, the dispensing pharmacy and Decedent's other medical care providers – all of whom have been identified by Plaintiff in her Initial Disclosure - are crucial to this litigation. Each of these individuals are irrefutably located in North Carolina.

A review of Plaintiff's Rule 26(a) Initial Disclosure in this case establishes that there are numerous non-party, fact witnesses identified by Plaintiff that are located in North Carolina. Decedent's treating and prescribing physician, Dr. Corrigan and his nurse practitioner, Jerri L. Patterson, are located in Pinehurst, North Carolina. The investigating law enforcement officers are located at the Robeson County Sheriff's Office in Lumberton, North Carolina. In addition, the Decedent's post-mortem examination was performed by John D. Butts, M.D. of the office of the Chief Medical Examiner, located in Chapel Hill, North Carolina. The Decedent's toxicology results were analyzed by Ruth Winecker, Ph.D. in Chapel Hill, North Carolina. In fact, all seven (7) of the Decedent's medical care providers identified by the Plaintiff are located in North Carolina. Therefore, this factor weighs strongly in favor of transferring this matter to the Eastern District of North Carolina.

To the extent that Plaintiff identifies several potential witnesses employed by the Mylan Defendants, very few of these individuals – Peter Bottini, Phar.D.[2], Michael Houghton, Andrea Miller, Ron Selders and Russ Rachley – reside in the State of West Virginia. The Mylan Defendants submit that the individuals with the most knowledge regarding the design and manufacture of the MFTS are located in St. Albans, Vermont. William Brochu, Ph.D. resides and works in St. Albans, Vermont while John O'Donnell, Ph.D., resides in Florida, Gordon Flynn, Ph.D. lives in Ann Arbor, Michigan and John Hango also lives in Vermont. In a further attempt to bolster her argument, Plaintiff has identified numerous individuals from Mylan's president to the MFTS line workers (all of whom are located in Vermont), none of which have any relevant information regarding Plaintiff's claims.

The foregoing notwithstanding, Mylan will agree to make all employees with relevant information that are properly noticed for deposition available for discovery purposes to the extent that those individuals reside outside the subpoena power of the United States District Court for the Eastern District of North Carolina. Conversely, none of the non-party fact witnesses identified by Plaintiff as having relevant information to his case are subject to the subpoena powers of this Court.

It should be noted that in each of the factually identical cases cited hereinabove, the Honorable Joseph R. Goodwin found that the majority of the relevant witnesses and evidence in each of the cases would be found in the state in which each of the respective plaintiffs died. Specifically, Judge Goodwin held as follows:

> Regarding the private-interest factors, all relevant facts in this case occurred outside West Virginia. The majority of witnesses – witnesses such as law enforcement officials, medical examiners and toxicologists, as well as [plaintiffs] medical providers are in

---

[2] Dr. Bottini is no longer employed by the Mylan Defendants and no longer resides in West Virginia. He now works and resides in the State of New Jersey.

> [decedent's home state]. Evidence regarding [plaintiff's] medical history and the circumstances surrounding his death will be found in Indiana as well.

See Urich, 2010 WL 3359462 at *2. Thus, it is evident that in cases such as this, the courts have unequivocally held that the majority of the relevant evidence is located in the state in which the decedent died and not West Virginia.

Accordingly, just as in Scott, supra, and Urich, supra, this matter should be transferred to the Decedent's home state of North Carolina as the overwhelming amount of evidence (including the lay witnesses) is located in North Carolina and the relevant evidence is more readily available in North Carolina than in West Virginia.

### B. NORTH CAROLINA IS A MORE CONVENIENT FORUM FOR THE PARTIES AND WITNESSES.

Transferring this matter to North Carolina will be more convenient for the parties as Plaintiff is a resident of the State of North Carolina. All of the non-party, fact witnesses to this case reside and/or are located in North Carolina. In contrast, there is not a single non-party witness who resides in West Virginia. Accordingly, it will be much more convenient to try this matter in North Carolina as the witnesses can attend the trial without the need for excessive travel or other accommodations.

### C. THE COST OF OBTAINING WITNESSES IN NORTH CAROLINA WILL BE LESS THAN IF THIS MATTER IS TRIED IN WEST VIRGINIA.

With respect to the third factor, the cost of obtaining the attendance of witnesses, the District Court in Scott, supra, stated that, "even if [the South Carolina witnesses] would agree to appear voluntarily at the trial of this matter, it would be unfair for [defendant] to incur this unnecessary cost. The United States District of South Carolina Orangeburg Division, on the other hand clearly would have subpoena power over all of the critical South Carolina witnesses."

Scott, at *5.  Accordingly, the district court found that the third factor weighed in favor of transferring the case from the Northern District of West Virginia to South Carolina.

As the Mylan Defendants do not have the availability to compel the non-party witnesses identified in Plaintiff's Rule 26(a) Initial Disclosures by Plaintiff as living or located in North Carolina to appear in West Virginia for trial, the Mylan Defendants will be forced to expend additional sums of money to take the videotape depositions of almost every witness that may have any knowledge regarding this matter.  If this case is tried in West Virginia, the parties will also be required to expend additional time and costs preparing for the depositions of the out-of-state witnesses as they must be taken for use at trial and will not be the general fact depositions usually obtained in cases such as this.  Simply put, many of the out-of-state witnesses identified by Plaintiff may be deposed twice; once for discovery purposes and once for use at trial.  This added expense alone weighs in favor of transferring this matter to North Carolina.

Furthermore, Mylan should not be forced to incur the travel and accommodation costs for those North Carolina witnesses willing to appear for trial in West Virginia, if any.  Therefore, just as in Scott, the third factor in this case weighs in favor of transferring this matter to North Carolina.

> **D.   THIS COURT DOES NOT HAVE THE POWER TO COMPEL THE ATTENDANCE OF THE OUT OF STATE WITNESSES, ALL OF WHOM LIVE IN NORTH CAROLINA.**

In Scott, supra, the Court held that, "it cannot be disputed that this Court does not have subpoena power over critical witnesses such as the coroner, the toxicologist and the investigating officers, all of whom are South Carolina residents."  Id.  Just as in Scott, the Court here does not have the subpoena power to compel the attendance of any of the key North Carolina witnesses including, but not limited to, Dr. Corrigan and Jerri Patterson, the Robeson County Sheriffs, the

Medical Examiner, Dr. Butts or Ruth Winecker, Ph.D., the toxicologist. This Court also lacks the subpoena power to compel the attendance of any of the seven (7) health care providers identified by the Plaintiff as having relevant information concerning the Decedent. Conversely, Mylan has agreed to make all of their employees with relevant information that are properly noticed for deposition available for discovery purposes to the extent that those individuals reside outside the subpoena power of the United States District court for the Eastern District of North Carolina.

Simply put, trial in this forum will result in a substantial injustice to the parties since this Court cannot compel the non-party witnesses residing in North Carolina to appear and testify in the United States District Court for the Northern District of West Virginia, thereby subjecting the parties to a trial by deposition.

### E. NORTH CAROLINA HAS A SUBSTANTIAL INTEREST IN HAVING THIS MATTER DECIDED IN NORTH CAROLINA.

Transferring this case is also warranted as North Carolina has a substantial interest in having this matter resolved in the State of North Carolina. West Virginia's choice of law rules suggest that North Carolina substantive law will apply to this action. When presented with a choice-of-law question, a federal court sitting in diversity must sit in the place of the state court and apply the forum state's choice-of- law rules. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496-97 (1941); Penn Coal Corp. v. William H. McGee and Co., Inc., 903 F.Supp. 980, 983 (S.D.W.Va. 1995). It is well settled that in a tort action, such as this, West Virginia applies the law of the place of injury ("*lex loci delicti*"). Chemtall, Inc. v. Madden, 607 S.E.2d 77 (W.Va. 2004). As Plaintiff readily admits that Decedent was treated in North Carolina; was prescribed a fentanyl patch in North Carolina; filled her prescription in North Carolina; utilized the patch in North Carolina; and died in North Carolina, *lex loci delecti* requires that North

Carolina law be applied to the case *sub judice*. North Carolina is clearly the epicenter of this action and West Virginia has little, if any, interests in this case.³

With respect to the sixth factor, the interest in having local controversies decided at home, the Scott Court found that "this factor also weighs heavily in favor of transfer of the instant civil action to the Orangeburg Division of the United States District Court for the District of South Carolina." Scott, at *6. Specifically, the District Court held as follows:

> "the South Carolina Court clearly has an interest in adjudicating this controversy in light of the fact that the motor vehicle accident in question occurred in South Carolina; the fact that the decedent was a resident in South Carolina, both at the time that he entered into the insurance policies with the defendants and at the time of the motor vehicle accident in question; and the fact that virtually all of the witnesses are South Carolina residents."

Likewise, Judge Goodwin held as follows:

> As for the public-interest factors, [decedent's home state] has a strong interest in having this case litigated locally. Indiana's interests include having one of its citizen's rights vindicated, as well as protecting its other citizens from potentially harmful pharmaceutical drugs. Conversely, West Virginia's interests in this case are few, if it has any interests at all.

Urich, supra, at *2.

The same can be said with respect to the case *sub judice*. Here, the Decedent died in North Carolina; the Decedent was a resident of North Carolina, both at the time that he died and at the time he was prescribed the MFTS; and numerous non-party fact witnesses identified by Plaintiff are North Carolina residents. Accordingly, the sixth factor weighs heavily in favor of

---

³ It is expected that Plaintiff will argue that West Virginia law applies to the failure to warn claim. *See*, Vitatoe v. Mylan Pharmaceuticals, Inc., 696 F.Supp.2d 599 (N.D.W.Va. 2010); Woodcock v. Mylan Inc., 661 F.Supp.2d 802 (S.D.W.Va. 2009). The Mylan Defendants submit that these cases were erroneously decided and the federal court's prediction that the Supreme Court of West Virginia would allow a non-resident to re-write the law that controls this cause of action simply by filing the case in West Virginia is a flawed one. Nevertheless, even if West Virginia law applies to the warnings claim, a fact Mylan does not concede, North Carolina law will control every other aspect of the liability and damages claim and this factor still mitigate in favor of transfer.

transferring this matter to the United States District Court for the Eastern District of North Carolina.

### F.  IN THE INTEREST OF JUSTICE THIS CASE MUST BE TRANSFERRED TO NORTH CAROLINA.

The Mylan Defendants submit that allowing this claim to proceed in the State of West Virginia would result in a substantial injustice to everyone involved.  As previously stated, if this case remains in West Virginia, the Mylan Defendants will be forced to expend substantial amounts of time and money that would otherwise be unnecessary and will be forced to try this matter by videotape thereby causing substantial injustice to the Mylan Defendants.  The citizens of North Carolina will also suffer injustice if this case, which is factually predicated upon acts that occurred solely in North Carolina, is tried to a West Virginia jury.  Clearly, the citizens and the State of North Carolina have a greater interest in resolving this matter than do the citizens of West Virginia.  Concomitantly, the citizens of the Northern District of West Virginia will bear the burden of deciding a case that has no factual nexus with this jurisdiction.  Finally, the North Carolina courts will be divested of their right to decide a cause of action that unequivocally arose in the State of North Carolina, while this Court will be burdened with deciding a matter in which it has little, if any interest.

### CONCLUSION

For all of the reasons stated herein and in the Defendants' Motion to Transfer, the Mylan Defendants submit that the interests of justice dictate that this Honorable Court should decline jurisdiction and should transfer this action to the United States District Court for the Eastern District of North Carolina.

1905938v11905938v1

Respectfully submitted:

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP


By: */s/ Clem C. Trischler*
Clem C. Trischler, Esquire
WV ID No. 5267
Ryan J. King, Esquire
WV ID No. 8818
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Telephone: 412-263-2000
Facsimile: 412-263-4246
Email: CCT@pietragallo.com
Email: RJK@pietragallo.com

**Attorney for Defendants, Mylan Inc., Mylan Technologies Inc., and Mylan Pharmaceuticals Inc.**

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the within pleading has been served upon counsel of record by:

|  |  |
|---|---|
| _____ | Hand Delivery |
| _____ | First Class Mail, Postage Prepaid |
| _____ | Certified Mail, Return Receipt Requested |
| _____ | Fax Transmission |
| _____ | Overnight Mail |
| __X__ | Electronic Notice by ECF |
| _____ | E-Mail |

at the following addresses and/or numbers:

Michael E. Heygood, Esquire
James Craig Orr, Jr., Esquire
Eric D. Pearson, Esquire
Charles W. Miller, Esquire
Heygood Orr & Pearson
2331 W. Northwest Highway, 2nd Floor
Dallas, TX  75220

Kathryn Reed Bayless, Esquire
Bayless Law Firm, PLLC
1607 W. Main Street
Princeton, WV  24740


PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP


By:      */s/ Clem C. Trischler*
      CLEM C. TRISCHLER, ESQUIRE
      Attorney for Defendants

Date:    January 21, 2011

1903568v1