IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| CARLENE LOCKLEAR, Personal Representative of the ESTATE OF MICHAEL LOCKLEAR, Deceased, | CASE NO. 1:10-cv-164 |
| Plaintiff, | JURY TRIAL DEMANDED |
| vs. | |
| MYLAN INC., MYLAN PHARMACEUTICALS INC., and MYLAN TECHNOLOGIES INC., | |
| Defendants. | |

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| ROSE ANN MOWERY, Executor of the ESTATE OF EDWARD MOWERY, Deceased, | CASE NO. 1:10-cv-178 |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| MYLAN INC., MYLAN PHARMACEUTICALS INC., and MYLAN TECHNOLOGIES INC., | |
| Defendants. | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| BETH OLIVER, Personal Representative of the Estate of MARK MENDENHALL, Deceased, | CASE NO. 1:10-cv-168 |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| MYLAN INC., MYLAN PHARMACEUTICALS INC. and MYLAN TECHNOLOGIES INC., | |
| Defendants. | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| STEPHEN ROSENBERG, Personal Representative of the ESTATE OF TONI ROSENBERG, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>MYLAN INC., MYLAN PHARMACEUTICALS INC., and MYLAN TECHNOLOGIES INC.,<br><br>Defendants. | CASE NO.: 1:10-CV-169<br><br>JURY TRIAL DEMANDED |

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| JEFFREY WINTERS, as PERSONAL REPRESENTATIVE OF THE ESTATE OF LAURIE WINTERS, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>MYLAN INC., MYLAN PHARMACEUTICALS INC., and MYLAN TECHNOLOGIES INC.,<br><br>Defendants. | CASE NO. 1:10-cv-186<br><br>JURY TRIAL DEMANDED |

## MYLAN DEFENDANTS' REPLY TO PLAINTIFFS' CONSOLIDATED MEMORANDUM IN RESPONSE TO DEFENDANTS' MOTIONS TO TRANSFER PURSUANT TO 28 U.S.C. §1404[1]

AND NOW, come the Defendants, Mylan Inc., Mylan Pharmaceuticals Inc. ("MPI") and Mylan Technologies Inc. ("MTI") (hereinafter collectively referred to as "Mylan" or the "Mylan Defendants"), by and through their counsel, Clem C. Trischler, Esquire and Pietragallo Gordon

---

[1] To avoid confusion and in the interest of judicial efficiency and economy, the Mylan Defendants submit the following consolidated reply in the following five (5) cases: (1) Locklear v. Mylan, Inc., No. 1:10-cv-164; (2) Oliver v. Mylan Inc., No. 1:10-cv-168; (3) Rosenberg v. Mylan Inc., No. 1:10-cv-169; (4) Mowery v. Mylan Inc., No. 1:10-cv-178; and (5) Winters v. Mylan Inc., No. 1:10-cv-186, which comprehensively addresses those issues raised in Plaintiffs' Consolidated Response in Opposition to Defendants' Motions to Transfer.

1923880v1                                                             2

Alfano Bosick & Raspanti, LLP, and submit this Reply to Plaintiff's Brief in Opposition to Defendants' Motion to Transfer Pursuant to 28 U.S.C. §1404.

## INTRODUCTION

Plaintiffs' Response presents nothing more than a rehash of the arguments previously submitted to, considered by and rejected by the Honorable Joseph Robert Goodwin, Chief Judge, United States District Court for the Southern District of West Virginia. If anything, the arguments raised by Plaintiffs actually illustrate the very reasons that the Court should decline jurisdiction and transfer these matters to the appropriate District Courts in the decedents' respective home states.

Plaintiffs attempt to categorize all fentanyl cases as "identical" or so close in fact that they will follow the same trial strategy and trial plan as that in <u>Richardson v. Mylan Inc.</u>, a case recently **tried** to a defense verdict **in the decedent's home state.** Plaintiffs' logic is faulty as the <u>Richardson</u> case was filed where the decedent lived; where the MFTS was prescribed and used; and where the cause of action arose, i.e. California. <u>Richardson</u> did not proceed in West Virginia, and it is undeniable that both parties received a fair trial and had equal access to important sources of proof. This case does nothing except illustrate the very reason why Mylan's Motion to Transfer should be granted. While each of the five (5) cases now pending in this Court will likely include testimony from both parties' experts and Mylan's employees, some of whom admittedly live in West Virginia, such facts do not negate the need for the parties to be able to call non-party fact witnesses at trial, something Plaintiffs readily admit to doing in the <u>Richardson</u> case. *See* Response, p. 9. If the Court adopts Plaintiffs' position, the parties will be precluded from presenting live testimony from non-party fact witnesses.

Furthermore, Plaintiffs' argument that this product defect case must be brought where the alleged "culpable conduct" occurred is defied by their own actions as the same lawyers have filed forty-nine (49) cases against the Mylan Defendants involving the Mylan Fentanyl Transdermal System ("MFTS") in the jurisdiction where the decedent lived, where the death occurred and where the non-party witnesses reside.[2]  Except in rare instances when they have elected to forum shop in West Virginia, the Plaintiffs' lawyers have recognized that these cases

---

[2] Frisby-Cadillo v. Mylan Inc. et al, 3:09-cv-05816-JL, USDC Northern District of California; Ross v. Mylan Inc. et al, 10cv05-7211, Court of Common Pleas, Franklin County, Ohio; Blackwell-Sims v. Mylan Inc. et al, 2:09-cv-00770, USDC, Southern District of Ohio; Cruz v. Mylan Inc. et al, 8:09-cv-11006-T17 TBM, USDC, Middle District of Florida; Gortat v. Mylan Inc. et al, 3:09-cv-754-L, USDC, Northern District of Texas, Dallas Div.; Grange v. Mylan Inc. et al, 1:07-cv-00107-TC, USDC, District of Utah, Central Division; Grasso v. Mylan Inc. et al, 9:10-cv-80217, USDC, Southern District of Florida; Houston v. Mylan Inc. et al, 8:09-cv-00306, USDC, District of Nebraska; Johnson v. Mylan Inc. et al, 5:09-CV-97-TBR, USDC, Western District of Kentucky; Judon v. Mylan Inc. et al, 4:09-cv-103-DPJ-JCS, USDC, Southern District of Mississippi, Eastern Div.; LaPaglia v. Mylan Inc. et al, 1:08-cv-3025, USDC, Northern District of Ohio, Eastern Div.; O'Sullivan v. Mylan Inc. et al, 2:09-cv-01475 USDC, Eastern District of California; Salmon v. Mylan Inc. et al, 1:09-cv-00080, USDC, Southern District of Georgia; Stanley v. Mylan Inc. et al, 1:09-cv-00124-TS, USDC, District of Utah, Central Div.; Turner v. Mylan Inc. et al, 4:09-cv-01816 PIA, USDC, Eastern District of Missouri; Van Reed v. Mylan Inc. et al, 2:09-cv-127, USDC, District of Vermont; Garner v. Mylan Inc. et al, 3:09-cv-00746-cmc, USDC, District of South Carolina, Columbia Div.; Pope v. Mylan Inc. et al, 1:09-cv-00026-ss, USDC, Western District of Texas; Briseno v. Mylan Inc. et al, CV-2009-11861, State of New Mexico, County of Bernalillo, Second Judicial District; Brown v. Mylan Inc. et al, 09L241, Circuit Court, Thirteenth Judicial Circuit, County of LaSalle, Illinois; Chrazanowski v. Mylan Inc. et al, CAM-L-19-09, Superior Court of New Jersey, Camden County; Gaddie v. Mylan Inc. et al, 18-09-c-01795-1, District Court, Northeast Central Judicial District, County of Grand Forks, North Dakota; Higgins v. Mylan Inc. et al, CV200912106, State of New Mexico, County of Bernalillo, Second Jurisdiction; Jeffries v. Mylan Inc. et al, 2009-cp-110729, Court of Common Pleas, County of Cherokee, South Carolina; Kiddy v. Mylan Inc. et al, CI-2009-3627, District Court of Oklahoma County, Oklahoma; Mace v. Mylan Inc. et al, 07-CVS-4905, General Court of Justice, Superior Court Division, Gaston County, North Carolina; Martorelli v. Mylan Inc. et al, 3-14509, Circuit Court of Knox County, Tennessee; Murphy v. Mylan Inc. et al, 080500804, Fifth District Court, Iron County, State of Utah; Ratliff v. Mylan Inc. et al, 10-C-6, Circuit Court of Gilmer County, West Virginia; Rorison v Mylan Inc. et al; GD 10-947, Court of Common Pleas, Allegheny County, Pennsylvania; Riparbelli v. Mylan Inc. et al, CV09-00456, Dept. No. 10, Second Judicial District Court, County of Washoe, Nevada; Upton v. Mylan Inc. et al, 10 CE CB 00445 AMC, Superior Court of California, County of Fresno; Apodaca v. Mylan Inc., 2010-1981, District Court of El Paso County, Texas, Berry v. Mylan Inc., 2:09-cv-871 USDC, Eastern District of California; Borowicz v. Mylan Inc., 2:10-cv-1101, USDC, Southern District of Ohio; Cole v. Mylan Inc., 24-c-11-000731, Circuit Court for Baltimore City, Maryland; Jameson v. Mylan Inc., 10-cv-11585, USDC, District of Massachusetts; Johnson v. Mylan Inc., 09-CI-00098, Commonwealth of Kentucky, Caldwell Circuit Court; Karuba v. Mylan Inc., 10-012078, Circuit Court of the 13th Judicial Circuit of State of Florida, in and for Hillsborough County; Kittl v. Mylan Inc., 2010-L-003834, Circuit Court of Cook County, Illinois; Muras v. Mylan Inc., 2010-V-182, District Court of Fayette County, Texas; Richardson v. Mylan Inc., 09-cv-1041, USDC, Southern District of California; Shaw v. Mylan Inc., 34-2010-89846, Superior court of the State of California, for the county of Sacramento; Sigaran v. Mylan Inc., 10-14403, District Court of Dallas County, Texas; Stewart v. Mylan Inc., 2010-cv-7587, District Court for the City and County of Denver, Colorado; Wittinghill v. Mylan Inc., cv201014027, State of New Mexico, County of Bernalillo, 2nd Judicial District; Thomas v. Mylan Inc., 10-4167, Commonwealth of Massachusetts, Trial Court; Wilson v. Mylan Inc., 10-cv-874, Court of Common Pleas, Mahoning County, Ohio; and Woodard v. Mylan Inc., 2010-CG-1306, Superior Court of the State of Georgia for the County of Laurens.

ought to be litigated in the forum where the decedent lived; where the death occurred; and where the MFTS was prescribed, dispensed and used. Plaintiff's suggestion here, that the case must be litigated where the alleged "culpable" acts occurred, is disingenuous in light of the Plaintiffs' counsel's prior acts. Moreover, Plaintiffs' presented this very argument on four separate occasions to Judge Goodwin in their various Responses in Opposition to Mylan's Motions to Transfer pursuant to 28 U.S.C. §1404[3]. In each case, the Court found Plaintiffs' arguments unavailing and transferred the cases to the decedents' respective home states.

Contrary to Plaintiffs' allegations, the Mylan Defendants respectfully submit that the vast majority of the evidence and non-party, fact witness testimony relevant to these cases is located in the state in which the decedent was treated; where the MFTS was prescribed, filled and utilized; and where the decedent is alleged to have died. Whether the Plaintiffs' claims are in strict liability, negligence, breach of warranty or some other cause of action, the issue of causation is fundamental and critical to these actions and will be based upon more than just expert testimony. Accordingly, witnesses such as the decedents' medical care providers, the first responders, the investigating law enforcement officers, the medical examiners, and the toxicologists, the majority of whom live in the decedents' respective home states and all of whom reside outside the Northern District of West Virginia will be critical in each of these cases. Plaintiffs cannot simply pick and choose which issues and witnesses they believe to be relevant at the exclusion of the others when analyzing the convenience of venue.

Almost every fact witness identified by the respective plaintiffs, as evidenced by Plaintiffs' initial Rule 26(a) Disclosures, are individuals that have knowledge relating to the decedents' medical treatment, physical and mental state, and the investigation into the decedent's

---

[3] *See* Gardner v. Mylan Inc., 2:09-cv-1289, Document No. 30, pp.10-13; Arnett v. Mylan Inc., 2:10-cv-114, Document No. 28, pp. 10-13; Sanner v. Mylan Inc., 2:10-cv-00166, Document No. 24, pp. 11-13; and Urich v. Mylan Inc., 2:10-cv-00330, Document No. 24, pp. 10-12.

1923880v1                                    5

death. In fact, Plaintiffs' counsel admits that while numerous experts and Mylan employees were called in the Richardson trial, **Plaintiffs' were able to elicit live trial testimony from three (3) fact witnesses**, the medical examiner, the prescribing physician and the toxicologist, **because the case was tried in the decedent's home state of California and the trial court had the power to subpoena those individuals**. If this Court accepts Plaintiffs' argument, neither of the parties will be able to provide live trial testimony from the non-party, fact witnesses as this Court does not have the power to subpoena those individuals, a fact apparently lost upon the Plaintiffs or, at least, dutifully ignored.

As will more fully addressed below, Plaintiffs' attempts to circumnavigate Mylan's well supported Motion to Transfer Venue should be given little consideration as they are without merit and have previously been found to be unpersuasive. Moreover, as will be discussed, many of the arguments made by Plaintiffs actually support transferring these matters to the decedents' respective home states.

## ARGUMENT

### I.   EACH CASE MUST BE ANALYZED ON A CASE-BY-CASE BASIS.

Plaintiffs' agree that when deciding a motion pursuant to 28 U.S.C. §1404(a), the court is required to analyze the request on its own facts and merits. *See* Response, p.5. The United States Supreme Court has held that §1404 "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, **case-by-case consideration of convenience and fairness**.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29-30 (1988) citing Van Dusen v. Barrack, 376 U.S. 612, 622 (1964) (emphasis added). As this Court is well aware, no two cases are tried in the same manner; each trial is a fluid situation calling upon the attorneys involved to assess their position and make the appropriate decision regarding trial strategy.

Accordingly, Plaintiffs' reliance upon how a prior case (Richardson) or three (3) cases involving a different defendant (Alza); a different product and different defense counsel were tried, is completely irrelevant with respect to how any one of these five cases will be tried.

Plaintiffs claim that the defendants are being disingenuous by stating that the trials in "these cases will primarily depend on the testimony of non party witnesses such as the decedents' treating physicians, local law enforcement, and first responders." *See* Response, p. 3. Plaintiffs then state that in the Richardson case, only three (3) of the nineteen (19) witnesses called at trial were non-party witnesses and that they were all called by the plaintiffs. Who actually calls the witnesses is completely irrelevant. Had plaintiff's failed to call the non-party witnesses; the defense would have called those individuals to the stand. The more relevant point, which Plaintiffs understandably ignore, is that because the case was tried where the decedent died, California, the parties could subpoena those non-party witnesses to attend and testify at trial, a fact that is shared in each of the three (3) Alza cases cited in Plaintiffs' Response. *See* Response, p. 9. In each of the Alza cases relied upon by the Plaintiffs, the trial was apparently held in the forum in which the decedent died, thereby creating the opportunity to call non-party fact witnesses to testify live before the jury. If the Court adopts the Plaintiffs' argument, both parties will lose the ability to call any of the non-party fact witnesses identified in Plaintiffs' respective Rule 26(a) disclosures to testify at trial.

That only three (3) fact witnesses were called to testify is also irrelevant. Mylan made a strategic decision not to call any additional fact witnesses in its case in chief because the testimony elicited on cross examination of plaintiff's experts and those three (3) fact witnesses was sufficient to make clear that plaintiff's claims were utterly without merit, a fact evidenced by the jury returning a unanimous defense verdict after less than one (1) hour of deliberation. A

copy of the Court's minute entry is attached as Exhibit "A." Such may not be the case in the trials of these cases. For instance, as set forth in Defendants' Motion to Transfer in <u>Winters v. Mylan Inc.</u>, the decedent's death was ruled a suicide by the medical examiner. *See* Exhibit "B," p. 8 attached hereto. Moreover, less than eight hours before she was found dead by her husband, the police were called to the plaintiff's apartment over a domestic disturbance during which the decedent admitted to misusing her prescription medication. *See* Exhibit "C" attached hereto. The police records also establish that plaintiff apparently waited for approximately twenty minutes before calling 911 to report that his wife was not breathing. *See* Exhibit "D," p. 4, attached hereto. The records from the police department also show that the decedent had a history of misusing prescription medications. *See* Exhibit "D," p. 3. Therefore, it may be necessary to call more than three fact witnesses in the <u>Winters</u> case, should plaintiff's experts come up with a believable defect theory. In <u>Winters</u>, Mylan expects that the medical examiner, police and first responders will all be critical witnesses in establishing that the decedent's death was unrelated to the function of Mylan's product. If the plaintiff is allowed to proceed with this case in a remote forum, the jury will be denied the opportunity to hear this important testimony live at trial. Clearly, Plaintiffs should not be permitted to muzzle or limit the presentation of critical causation testimony by bringing the case hundreds or thousands of miles from where it belongs.

    **II.    DEFENDANTS HAVE NOT MISREPRESENTED JUDGE GOODWIN'S RULINGS.**

Contrary to Plaintiffs' allegations, the defendants have never stated nor attempted to represent that Judge Goodwin was of the opinion that an MFTS case should never be brought in West Virginia[4]. Mylan is quite sure that if an individual was actually prescribed and utilized a

---

[4] In fact, in order to avoid any such appearance, Defendants attached all of Judge Goodwin's orders and opinions to their Motions to Transfer for the Court's convenience and consideration.

MFTS in West Virginia and was alleged to have died in West Virginia, Judge Goodwin would rule that the case was properly brought in West Virginia. Interestingly, in the one and only case in which such a scenario occurred, **Plaintiffs' counsel chose <u>not</u> to file in the Northern District of West Virginia**, where they claim the "culpable conduct" occurred, but filed in the Circuit Court of Gilmer County, West Virginia. *See* <u>Ratliff v. Mylan Inc.</u>, 10-c-6, Circuit Court of Gilmer County, West Virginia (the location where the Decedent lived; where the MFTS was used and where the death occurred. Yet another example of a case being brought where it belongs.).

Mylan has, however, represented that in cases in which the decedent was treated, prescribed an MFTS, utilized the same and died in a state other than West Virginia, Judge Goodwin has unequivocally held that West Virginia's "interests…are few, if it has any interests at all." <u>Booker v. Mylan Inc. et al.</u>, No. 2:10-cv-00196, Document 26, p. 4. To avoid any confusion or further claims of impropriety, let's look at what Judge Goodwin actually said. In no uncertain terms, Judge Goodwin has held over and over again that West Virginia's interests in litigating out of state claims are "few":

> The events or omissions giving rise to the plaintiffs' claims all occurred in the Western District of Michigan, not the Southern District of West Virginia. Ms. Leonard was prescribed the patch in Michigan, she filled her prescription there, she overdosed there, and she died there. Conversely, no material facts relating to the plaintiffs' injuries occurred in the Southern District of West Virginia. Therefore, the Western District of Michigan, rather than the Southern District of West Virginia, is the appropriate venue for this case. <u>Leonard</u>, 718 F.Supp.2d at 744.
>
> Regarding the private-interest factors, all relevant facts in this case occurred in Michigan. The majority of witnesses – witnesses such as law enforcement officers, medical examiners and toxicologists, as well as Ms. Leonard's medical providers – are in Michigan. Indeed, all non-party witnesses identified by the plaintiffs in their Rule 26(a) report is in Michigan. Likewise evidence regarding Ms.

Leonard's medical history and the circumstances surrounding her death will be found in Michigan. Furthermore, evidence related to the defendants' design and manufacture of the patch in possession of the defendants will be subject to the Michigan federal courts subpoena power. **As for the public-interest factors, Michigan has a strong interest in having this case litigated locally. Michigan's interests include having one of its citizen's rights vindicated, as well as protecting its other citizens from potentially harmful pharmaceutical drugs. Conversely, West Virginia's interests are few. Other than the incorporation of two of the defendants in West Virginia, there are no West Virginia interests in this case.** Id. at 745. (emphasis added)

\*\*\*

The events or omissions giving rise to the plaintiff's claims occurred in the Western District of Oklahoma, not the Southern District of West Virginia. Ms. McTiernan was prescribed the patch in Oklahoma, she filled her prescription there, she overdosed there, and she died there. Conversely, no material facts relating to the plaintiff's injuries occurred in the Southern District of West Virginia. Therefore, the Western District of Oklahoma, rather than the Southern District of West Virginia is the appropriate venue for this case. McTiernan v. Mylan Inc. et al., 2010 WL 2595114 (S.D.W.Va. 2010).

Considering these factors, this case should be tried in the Western District of Oklahoma. First, this case could have originally been filed there. The events or omissions giving rise to the plaintiff's claims occurred there, and venue is thus proper in that district under §1391(b)(2). Second, the private- and public-interest factors favor transfer. **Regarding the private-interest factors, all relevant facts in this case occurred in Oklahoma. The majority of witnesses – witnesses such as law enforcement officers, medical examiners and toxicologists, as well as Ms. McTiernan's medical providers – are in Oklahoma. Evidence regarding Ms. McTiernan's medical history and the circumstances surrounding her death will be found in Oklahoma. Furthermore, evidence related to the defendants' design and manufacture of the patch in possession of the defendants will be subject to the Oklahoma federal court's subpoena power. As for the public-interest factors, Oklahoma has a strong interest in having this case litigated locally. Oklahoma's interests include having one of its citizen's rights vindicated, as well as protecting its other citizens from potentially harmful pharmaceutical drugs. Conversely, West**

> **Virginia's interests are few.** Other than the incorporation of two of the defendants in West Virginia, there are no West Virginia interests in this case. Id. at *3. (emphasis added)

To avoid unnecessary repetition, the same or almost identical language can be found in Arnett v. Mylan et al., 2010 WL 3220341 (S.D.W.Va. 2010); Sanner v. Mylan Inc. et al., 2010 WL 3294370 (S.D.W.Va. 2010); Urich v. Mylan Inc. et al., 2010 WL 3359462 (SDWVa 2010); Reed v. Mylan Inc. et al., 2:10-cv-00404, Document 22; and Booker v. Mylan Inc. et al., 2:10-cv-00196, Document 26.

In each instance, Judge Goodwin not only found that the Southern District of West Virginia had no connections with the Plaintiffs' claims but also found that the only meaningful connection with the state of West Virginia was that two of the defendants were incorporated here. Moreover, Judge Goodwin recognized in each instance that Mylan's documents would be subject to the subpoena power of the district court in which the respective decedent died. Thus, Judge Goodwin determined that West Virginia had few contacts with the plaintiffs' respective causes of action.

The court should also be aware that in Arnett, *supra.*, Gardner, *supra.*, Sanner, *supra.*, and Urich, *supra.*, Plaintiffs' counsel made the same argument that "the majority of the tortuous conduct at issue occurred in Morgantown, West Virginia and Cannonsburg, Pennsylvania, less than fifty miles from West Virginia." *See* Response, IV, pp. 17-19. In each instance Plaintiffs relied on the foreign decisions in Dwyer v. Gen. Motors Corp., 853 F.Supp.690, 690 (S.D.N.Y. 1994), Workman v. Johnson & Johnson, No. 06-2523, 2007 U.S. Dist. Lexis 46214 (D.N.J. June 26, 2007) and Mohamed v. Mazda Motor Corp., 90 F.Supp.2d 757, 776 (E.D.Tex. 2000) to support their arguments. Judge Goodwin, however, found the same unpersuasive and transferred the case to the decedent's home state. It is uncontested that Judge Goodwin had the authority

and ability to transfer any one of the above referenced matters to the Northern District of West Virginia, had he found Plaintiffs' argument compelling. He did not. Likewise, this Honorable Court should decline to accept jurisdiction over this matter and should transfer each of these cases to the decedents' home states.

### III. THE SOURCES OF PROOF IN THESE MATTERS ARE NOT IN THE NORTHERN DISTRICT OF WEST VIRGINIA.

Plaintiffs' allegation that the majority of the evidence is most easily obtained in the Northern District of West Virginia is belied by their own initial disclosures. In each of the previously mentioned cases as well as the cases currently before this Court, Plaintiffs identified numerous individuals residing in the decedent's home state as having relevant information with respect to Plaintiffs' claims. In each case, they generally identified the decedent's treating physicians, the local police department, first responders, the medical examiner and/or coroner and the toxicologist. Undeniably, these individuals <u>are not</u> located in West Virginia. As previously determined by Judge Goodwin, these sources of proof are to be found in the decedents' home states.

To the extent that there are documents within this Court's jurisdiction and subpoena radius, those documents were initially produced pursuant to a Global Discovery Agreement with Plaintiffs' counsel more than two years ago. The documents have been periodically supplemented over the last two years, bringing the total number of documents produced to over 800,000. To the extent that Plaintiffs contend that there are documents that have not previously been provided, any such documents would also be subject to the subpoena power of the district court in the decedents' home states, a fact repeatedly recognized by Judge Goodwin in his decisions granting transfer. Plaintiffs' counsel doggedly attempted to convince the Southern District that the majority of the documents and evidence necessary to try these cases were

located at MPI's headquarters in Morgantown, West Virginia and Mylan Inc.'s headquarters in Cannonsburg, Pennsylvania. The District Court repeatedly rejected Plaintiffs' argument.

Plaintiffs' allegation that "the two most important employees of Defendant Mylan Technologies reside in West Virginia" is largely irrelevant and certainly fails to outweigh the fact that **all** of the non-party witnesses reside outside of the Northern District of West Virginia. *See*, Response p. 6. As pointed out in Defendants' Brief in Support of Transfer, it is not the location of the party witnesses that deserves the greatest consideration when weighing the §1404(a) factors, but it is the convenience of the non-party witnesses that is most relevant. Plaintiffs also conveniently fail to point out that they have elicited significant amounts of testimony during the videotaped depositions of; *inter alia*, Ron Selders, Andrea Miller, Russ Rackley, Frank Sisto, Michael Houghton, John Hango, Peter Botini and Kenneth Miller.

Finally, Plaintiffs' argument that Mylan is unlikely to produce these individuals to testify at trial is contradicted by their earlier reference to the Richardson case, wherein they admit that several of the Mylan employees did testify live at trial. More importantly though, Plaintiffs had the ability and opportunity to call fact witnesses to the stand as the case was filed and tried in the decedent's home state of California. Accordingly, this Court should decline jurisdiction and transfer these matters to the District Court in which the respective decedents died.

### IV. PLAINTIFFS' RELIANCE ON RICHARDSON IS MISPLACED

Interestingly, Plaintiffs' claim that the Richardson case is a "roadmap as to how these cases are likely to be tried and who are the witnesses likely to be called." *See* Response, p. 7. If Richardson provides a road map to anything, it is a road map that illustrates the flaws, gaps and failings of the Plaintiffs' case. Every theory Plaintiffs advance in these five (5) cases was presented to the Richardson jury and rejected. In fact, Plaintiffs' reliance is puzzling given that

after hearing the testimony of nineteen (19) witnesses, the jury deliberated for approximately fifty-five (55) minutes and returned a unanimous defense verdict rejecting every one of the Plaintiffs' theories of liability.  The foregoing notwithstanding, Plaintiffs' argument fails to recognize that the Richardson case was tried in the decedent's home state, California, thereby making it possible for the parties to call the prescribing physician, medical examiner and toxicologist to testify before the jury, the very right and opportunity Plaintiffs are attempting to destroy here.  Plaintiffs' argument also fails to recognize that trying the case in California was no less convenient than trying the case in West Virginia as testimony from Mylan can be had anywhere.

Plaintiffs' presumption that all of these cases will be tried in the same manner is also surprising.  While it is admitted that each of these cases will contain significant testimony from retained consultants and Mylan employees, it does not stand to reason that such facts render it unnecessary to call fact witnesses to testify at trial.  Further, as this Court is well aware, no two cases are tried exactly the same.  Just because trial counsel in Richardson made a strategic decision not to call additional fact witnesses does not mean that Mylan will do so in all cases. *See* Winters, *supra*.  More importantly, defense counsel's trial strategy in one case should not foreclose their right and ability to call non-party fact witnesses if necessary in a subsequent case; something that will be denied to Mylan if this case is litigated in West Virginia.

Finally, Plaintiffs continue to preach as to what evidence is "important" and "critical."  Ultimately, the jury will decide what evidence is important or critical to its deliberations.  It goes without saying that each side will present evidence it deems important or critical.  Plaintiffs' claim that "the testimony of Defendants' witnesses, primarily located in the Northern District of West Virginia; and … expert witness testimony regarding pharmacology, clinical and forensic

pathology, toxicology, transdermal science, drug warnings, and manufacturing practices" (Response, p. 10) is critical in these cases, all the while minimizing the testimony to be offered by the decedent's treating physicians, the police, medical examiner, toxicologists, first responders and family members, none of which are located in West Virginia. Plaintiffs, however, do not get to pick and choose what evidence is critical and important in a case. Fundamental fairness suggests that each side should be able to present that evidence which they deem important and relevant. Simply put, the point of Defendants' Motion to Transfer is that trying these cases thousands of miles from whether they belong denies Mylan this opportunity.

### V. PLAINTIFFS' ARGUMENTS WERE REJECTED BY JUDGE GOODWIN AND SHOULD BE REJECTED HERE.

With the exception of their reliance on the Richardson trial, Plaintiffs have failed to present any arguments that have not already been considered by Judge Goodwin and rejected. Instead, Plaintiffs attempt to rehash arguments that have been rejected by Judge Goodwin and the Honorable Russell M. Clawges, Jr., Chief Judge for the Circuit Court for Monongalia County, West Virginia[5]. While the decisions from the state court cases are not given precedential affect here, they do establish that Judge Clawges is also of the opinion that these cases should have been brought in the decedent's home state.

Throughout their Response Brief, Plaintiffs' focus upon the fact that the Mylan's employees are primarily located in Morgantown, West Virginia and Canonsburg, Pennsylvania, not on the location and convenience of non-party witnesses. Moreover they incorrectly allege

---

[5] The issues presented in these cases are precisely the same as those presented to the Circuit Court of Monongalia County, West Virginia. In each case, Judge Clawges dismissed the plaintiff's argument after balancing the public and private factors to be considered when addressing a Motion to Dismiss on the grounds of *forum non conveniens*. See Garner v. Mylan, No. 05-C-260; Pope v. Mylan, No. 08-C-478; Mace v. Mylan, No. 08-C-480; Apple v. Mylan, No. 10-C-116; Pratt v. Mylan, No. 10-C-196; Meyer v. Mylan, No. 10-C-305; *and* Surma v. Mylan, No. 10-C-306 (Orders attached hereto as Exhibit "E").

that the MFTS is a West Virginia product, a fact Plaintiffs know to be untrue[6]. All of these arguments have been made in an apparent attempt to distract the Court from the fact that when analyzed under the seven (7) factors that must be considered when deciding a Motion to Transfer pursuant to 28 U.S.C. §1404(a), the undeniable conclusion is that the decedent's home state is the more appropriate venue for these cases. If one were to accept the Plaintiffs' argument then every product liability suit involving Ford Motor Company would be brought in Michigan and every suit against Firestone would be litigated in Ohio.

The claims raised by Plaintiffs in their Response are belied by the actions of their counsel. In forty-nine (49) cases, the same law firm has filed suit in the state where the decedent resided, was treated and prescribed the MFTS, is alleged to have used the same and died. If the decedents' respective home states are an appropriate forum for forty-nine (49) fentanyl cases, why are these five (5) any different? The reality is they are not. While Plaintiffs allege that West Virginia has a substantial interest in deciding these matters in West Virginia, Judge Goodwin expressly denied as much on seven (7) separate occasions. Moreover, Plaintiffs chide defendants for not discussing where the culpable conduct occurred, an issue previously argued before Judge Goodwin and determined to be without merit. Just as Judge Goodwin did in Arnett, *supra.*, Gardner, *supra.*, Booker, *supra.*, Sanner, *supra.*, Leonard, *supra.*, Urich, *supra.*, and Reed, *supra.*, so too should this Honorable Court refrain from accepting Plaintiffs' unconvincing arguments and transfer these cases to the Decedents' respective home states.

---

[6] For approximately two years, the law firm of Heygood Orr and Pearson has been litigating MFTS cases against the Mylan Defendants and for those two years they have known that the MFTS was developed and is manufactured in Saint Albans, Vermont. They have also known that once manufactured, the product is shipped to MPI's distribution center in North Carolina where it is then distributed to secondary suppliers and distributors. Thus to claim that the MFTS is a West Virginia product is simply untrue. *See* Cuthbertson Affidavit attached hereto as Exhibit "F."

## **CONCLUSION**

Based upon the foregoing and the reasons more fully set forth in Defendant's Motion to Transfer and Brief in Support thereof, in the interest of justice and the convenience of the parties, these matters should be transferred to the United States District Courts in which each of the respective decedent's died.

Respectfully submitted,

By: /s/*Clem C. Trischler*
Clem C. Trischler (WV I.D. No.5267)
Ryan J. King (WV I.D. No. 8818)
**PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP**
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Telephone (412) 263-2000
Facsimile (412) 262-2001
CCT@Pietragallo.com
RJK@Pietragallo.com

**ATTORNEYS FOR MYLAN INC.
MYLAN PHARMACEUTICALS INC. and
MYLAN TECHNOLOGIES INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER** was served upon the following counsel of record via electronic service by the Court, this 16th day of February, 2011:

Michael Heygood
James Craig Orr, Jr.
Charles W. Miller
Heygood, Orr & Pearson
2331 W. Northwest Highway, Second Floor
Dallas, Texas 75220
michael@hop-law.com
jim@hop-law.com
charles@hop-law.com

Kathryn Reed Bayless, Esquire
The Bayless Law Firm PLLC
1607 W. Main Street
Princeton, WV  24740

*Attorneys for Plaintiffs*

By:   */s/ Clem C. Trischler*
Clem C. Trischler, Esq.
Ryan J. King, Esquire