# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CARLENE LOCKLEAR, Personal
Representative of the Estate
of Michael Locklear, Deceased,

        Plaintiff,

v.                    //     CIVIL ACTION NO. 1:10CV164
                                        (Judge Keeley)

MYLAN INC.,
MYLAN PHARMACEUTICALS INC., and
MYLAN TECHNOLOGIES, INC.,

        Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING MOTION TO TRANSFER (DKT. 29) AND DENYING AS MOOT MOTION TO AMEND OR VACATE SCHEDULING ORDER (DKT. 42)

### I. INTRODUCTION

This is one of seven cases filed in this Court against the defendants, Mylan Pharmaceuticals Inc. ("MPI"), Mylan Technologies Inc. ("MTI"), and Mylan Incorporated ("Mylan, Inc.")(collectively "Mylan"), each of which relates to an alleged wrongful death resulting from the use of Mylan's transdermal fentanyl patches.[1] In this and five of the six other cases, Mylan has filed motions to transfer pursuant to 28 U.S.C. § 1404(a), seeking a transfer to the

---

[1] A fentanyl patch delivers pain medication through a patient's skin.

district courts in the decedents' home states – in this case, North Carolina.[2] For the reasons that follow, the Court **GRANTS** the defendants' motion to transfer this case to the Eastern District of North Carolina. The analysis contained in this Memorandum Opinion and Order also pertains to the motions to transfer pending in the cases referenced, where the material facts are indistinguishable.

Mylan also filed a motion to vacate or amend the scheduling order pending the resolution of its motion to transfer. Based on the decision it reaches here, the Court **DENIES** that motion as **MOOT**.

## II. PROCEDURAL HISTORY

The plaintiff in this case, Carlene Locklear ("Locklear"), as the personal representative of the estate of Michael Locklear ("decedent"), filed her complaint in this Court after the decedent's fatal, allegedly accidental, drug overdose, which occurred after he applied a Mylan Fentanyl Transdermal System ("MFTS") patch. The complaint alleges strict liability based on manufacturing defect, failure to warn, and design defect, negligence, negligent misrepresentation, breach of implied

---

[2] See also Civ. Action Nos. 1:10cv168, 1:10cv169, 1:10cv178, 1:10cv186, and 1:11cv12. The complaint in Civ. Action No. 1:11cv80 also asserts similar claims, but no motion to transfer has been filed in that case as of yet.

warranties of fitness and merchantability, breach of express warranty, and wanton, willful, or reckless conduct.

### III. LEGAL STANDARD

**A.  Motion to Transfer Generally**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The parties here do not dispute that this case could have been brought in the Eastern District of North Carolina, where the decedent resided until his death. When this initial inquiry is satisfied, a court should analyze a transfer motion on a case-by-case basis, and weigh the following factors to determine convenience and fairness:

> (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

Alpha Welding and Fabricating, Inc. v. Heller, Inc., 837 F.Supp. 172, 175 (S.D.W. Va. 1993)(citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947); see also Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)(citing Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). The party seeking transfer is charged with the

burden of demonstrating that transfer to another forum is proper; furthermore, a plaintiff's choice of forum is given considerable weight. Verosol B.V. v. Hunter Douglas, Inc., 806 F.Supp. 582, 592 (E.D.Va. 1992).

**B.    Transfer of Similar Fentanyl Cases Filed in West Virginia**

In the Southern District of West Virginia, Chief Judge Joseph R. Goodwin analyzed the nature of these MFTS cases under Alpha Welding and Gulf Oil and transferred several to the decedents' home states. See, e.g., Leonard v. Mylan Inc., 718 F.Supp.2d 741 (S.D.W. Va. June 21, 2010).[3] In deciding to do so, he reasoned that the majority of likely non-party witnesses lived in the home states, and evidence regarding medical history and circumstances surrounding the deaths was located there. Id. at 745. Furthermore, he found that the home states had an interest in having their citizens' rights vindicated and in protecting their other citizens. Id. Other than the incorporation of two of the defendants here, he

---

[3] See also Gardner v. Mylan Inc., Civ. Action No. 2:09cv1289, 2010 WL 2595114 (S.D.W. Va. June 24, 2010); Arnett v. Mylan Inc., Civ. Action No. 2:10cv114, 2010 WL 3220341 (S.D.W. Va. Aug. 13, 2010); Reed v. Mylan Inc., Civ. Action No. 2:10cv404 (S.D.W. Va. Sep. 13, 2010); Sanner v. Mylan Inc., Civ. Action No. 2:10cv166, 2010 WL 3294370 (S.D.W. Va. Aug. 19, 2010); Urich v. Mylan Inc., Civ. Action No. 2:10cv330, 2010 WL 3359462 (S.D.W. Va. Aug. 23, 2010).

4

found there were no substantial West Virginia interests implicated. Id.[4]

### IV. DISCUSSION

**A.  Statutory Authority to Transfer**

In this case, Mylan seeks transfer to a district where the case could have been brought originally, in the district where the decedent resided at the time of his death and where Locklear remains domiciled. Thus, the first condition of § 1404(a) is satisfied and the Court must analyze the factors discussed in Alpha Welding.

**B.  Ease of Access to Sources of Proof**

Mylan argues that transfer is warranted because most of the sources of proof relating to Michael Locklear's death are located in North Carolina. It points to Locklear's initial disclosures pursuant to Fed.R.Civ.P. 26(a), which confirm that most of the fact witnesses with knowledge of the decedent's medical history and the circumstances surrounding his death reside in North Carolina.

Additionally, Mylan contends that relatively few of its employees identified as relevant by Locklear actually reside and

---

[4] Notably, Mylan maintains a manufacturing facility in the Northern District of West Virginia, but has no corporate presence in the Southern District.

work in West Virginia. Of these, only five live in West Virginia, while eleven reside in other states. Mylan also asserts that relevant records are located at its facilities in Vermont and Pennsylvania, as well as in this District. Significantly, Mylan agrees to make all of its employees with relevant information available for depositions, wherever they may reside and regardless of the venue.

Locklear, on the other hand, asserts that, for the most part, access to relevant sources of proof can be found in West Virginia. She contends that her causes of action arise in West Virginia because her claims focus on the design, marketing, and testing of the MFTS. She alleges that these activities occurred mainly in West Virginia or at Mylan's Pennsylvania facilities, both of which are within the subpoena power of this Court, and that relevant documentation is likely to be located there. Locklear rejects Mylan's offer to make its employees with relevant information available for deposition, pointing out that "relevant information" is a subjective determination that Mylan should not be allowed to make unilaterally.

Access to proof from non-parties, however, will be more readily obtainable if this action is transferred to North Carolina. The non-party witnesses likely to testify at trial include

individuals familiar with the decedent's treatment, activities, and death in that state. These witnesses have factual information material to the decedent's medical history and cause of death. Presumably, relevant medical documents are in the possession of either Locklear, her attorneys, or the decedent's treating physicians and other healthcare professionals located in or near North Carolina.

Locklear may obtain discovery regarding the design, marketing, and testing of the MFTS products through documents and depositions of relevant Mylan employees. Furthermore, the discoverable documents in this case related to Mylan's design, production and marketing activities likely are identical to those that have already been produced in other cases filed against Mylan in various jurisdictions. Given that the same attorneys represent each of the plaintiffs in these cases, the defendants may not need to produce these documents more than once if the parties agree. Finally, there is no evidence that Mylan would not honor its agreement to make its employees with relevant information available for discovery.

**C.   Convenience of Parties and Witnesses**

Mylan argues that because the majority of the non-party witnesses, and Locklear herself, are located in North Carolina it will be more convenient for all involved to try the case there. In

contrast, it notes that there are no identified non-party witnesses residing in West Virginia.

Locklear, however, argues that, because almost all of Mylan's critical witnesses are located in the Northern District or nearby in Pennsylvania, this Court is the most convenient forum for Mylan. She also contends that, because she brought her action in this forum and will appear here for trial, convenience is not an issue for her. She notes that under the Rules of Civil Procedure either party may issue subpoenas for videotaped depositions through the district courts in North Carolina. Fed.R.Civ.P. 45(a). From that, she reasons that West Virginia will actually be a more convenient forum because non-party witnesses will only be compelled to testify once, at a videotaped deposition for use at trial.

Because Mylan has agreed to make its witnesses available in North Carolina, and Locklear is willing to travel to West Virginia, the consideration of the burdens placed on non-party witnesses is paramount. These individuals with no stake in this litigation should not be asked to incur the inconvenience of traveling to West Virginia, even if voluntarily. Because the Eastern District of North Carolina is more convenient for such persons, this factor weighs strongly in favor of transfer.

**D.   Cost of Obtaining the Attendance of Witnesses**

Mylan argues that the cost of obtaining the attendance of witnesses will be greater in West Virginia than in North Carolina because it would have to depose each non-party witness twice. In Locklear's view, Mylan's argument ignores what has occurred in other MFTS cases, where Mylan has used videotaped depositions of non-party witnesses for both pretrial and trial purposes.

Because Mylan may videotape depositions for use at trial, and seems comfortable doing so, it is unlikely that it will incur significant additional costs by litigating in either West Virginia or North Carolina. On the other hand, Locklear has not shown that trial in her home state would cause her to incur any additional expense. Thus, this factor does not weigh strongly either in favor of or against transfer.

**E.   Availability of Compulsory Process**

Mylan contends that, if the case remains here, the parties will suffer a substantial injustice because they will not be able to compel witnesses residing in or near North Carolina to appear and testify at trial. While Locklear concedes there is no compulsory process by which to force witnesses from the decedent's home state to appear in this District, she argues that the witnesses may be compelled to provide videotaped deposition

9

testimony. She notes that in at least one other MFTS case that has proceeded to trial, Mylan did not call any non-party witnesses to give live testimony. Richardson v. Mylan, Inc., Civ. Action No. 09cv1041 (S.D.Cal. 2011). Moreover, two of three non-expert Mylan witnesses who did testify at trial actually resided in West Virginia.

Finally, Locklear argues that transfer would deprive her of the power to compel the attendance of Mylan's witnesses at trial. The Court is satisfied, however, that Mylan would not misrepresent its willingness to voluntarily produce its corporate witnesses. Consideration of this factor favors transfer because, as the parties are aware, they will not have access to full compulsory process for non-party witnesses even if the case proceeds in West Virginia. Despite its use of videotaped testimony in other cases, Mylan should not be limited to this tactic by an inability to procure live testimony from those with first-hand knowledge of the facts surrounding the decedent's death.

**F. Possibility of a View**

The parties agree that the possibility of a jury view is not likely in this case, and that this factor has no applicability in the Court's analysis.

**G. Choice of law and local interest**

Mylan argues that North Carolina has an interest in this case because that was where Michael Locklear was prescribed the fentanyl patch, used it, and died. On the other hand, Locklear argues that West Virginia has a substantial interest in having the matter decided in its courts because much of the culpable conduct occurred here. The complaint's allegations focus on the design, manufacturing, testing, marketing, and distribution of the patch, which took place in West Virginia, Pennsylvania and Vermont. Finally, acknowledging that West Virginia does not recognize the learned intermediary doctrine, Locklear argues that the trial court will be required to apply this aspect of West Virginia law regardless of whether North Carolina's laws generally govern the case.

    **a.    Learned intermediary doctrine**

In resolving a motion under § 1404(a), a court should consider whether the law of the transferee state significantly differs from that of the transferor state. Van Dusen v. Barrack, 376 U.S. 612, 622-25 (1964). On transfer, however, a party retains the benefits of the laws of the forum she initially selected. Id. at 633. That is, the case should remain as it was in all respects but location. Id.

North Carolina's courts have recognized the learned intermediary doctrine, under which a prescription drug manufacturer only has a duty to explain a drug's risks to the patient's doctor, who acts as a "learned intermediary" between the patient and the manufacturer. Baraukas v. Danek Med., Inc., Civ. Action No. 6:97cv613, 2000 U.S. Dist. LEXIS 5122 (M.D.N.C. Jan. 13, 2000). The manufacturer owes no such duty to the patient himself, so long as the warnings given by the manufacturer to the doctor are "adequate or reasonable under the circumstances of the case." Hardy v. Pharmacia Corp., Civ. Action No. 4:09cv119, 2011 U.S. Dist. LEXIS 57119 at *6-7 (M.D.Ga. May 27, 2011)(citing McCombs v. Synthes (U.S.A.), 277 Ga. 252, 253 (2003)).

Recognizing that the West Virginia Supreme Court of Appeals has declared that the learned intermediary doctrine violates the state's public policy, this Court has held that it cannot be applied in a diversity case, even when another state's substantive law otherwise controls. See Vitatoe v. Mylan Pharms., Inc., 696 F.Supp.2d 599, 609 (N.D.W. Va. 2010)(citing Johnson & Johnson Corp. v. Karl, 647 S.E.2d 899 (W. Va. 2007); and Woodcock v. Mylan, Inc., 661 F.Supp.2d 602, 607-608 (S.D.W. Va. 2009)).[5] The issue in

---

[5]This year, the West Virginia Legislature enacted a statute stating that "[i]t is public policy of this state that, in

Vitatoe, however, arose as a choice of law question, not on a motion to transfer.

While the question of which state's substantive law applies may need to be resolved at some later point, the Court need not answer that question to decide the motion to transfer. "[W]here the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." Van Dusen, 376 U.S. at 639.

The Court recognizes that the issues of governing law and the applicability of the learned intermediary doctrine may greatly affect the parties' causes of action and defenses. However, transfer to the Eastern District of North Carolina will not affect the analysis of these issues. Under Van Dusen, that analysis will be the same regardless of venue. Locklear consequently will suffer no prejudice flowing from any difference in applicable state law,

---

determining the law applicable to a product liability claim brought by a nonresident of this state against the manufacturer or distributor of a prescription drug for failure to warn, the duty to warn shall be governed solely by the product liability law of the place of injury ('lex loci delicti')." W. Va. Code § 55-8-16(a). The code provision only applies, however, to suits filed on or after July 1, 2011, and thus does not affect this action or the others referenced in this opinion. Id. at § 16(b).

and this factor does not counsel against granting the motion to transfer.

### b.    States' Interests Generally

Both West Virginia and North Carolina possess legitimate public interests in having this case decided in their respective courts. Because this litigation involves the death of a North Carolina resident, the citizens of that state have a substantial interest in having the case heard there. West Virginia, on the other hand, has an interest in having the claims decided where MPI and MTI are both incorporated. MPI's primary place of business is located in West Virginia, and all three defendants (MPI, MTI, and Mylan, Inc.) conduct business in here. The citizens of West Virginia have an interest in regulating corporations that do business within their state. See, e.g., Woodcock, 661 F.Supp.2d at 609-10 (Mylan, as a West Virginia company, can reasonably expect to be subject to the tort laws of the state).

Nonetheless, as Chief Judge Goodwin recognized in Leonard, the interest of the decedent's home state is stronger:

> [The decedent's home state] has a strong interest in having this case litigated locally. [That state's] interests include having one of its citizen's rights vindicated, as well as protecting its other citizens from potentially harmful pharmaceutical drugs. Conversely, West Virginia's interests are few. Other than the

14

> incorporation of two of the defendants in West Virginia, there are no West Virginia interests in this case.

<u>Leonard</u>, 718 F.Supp.2d at 745.

Although Mylan's facilities in West Virginia are located in this District, the limited extent of this state's interest is the same as in <u>Leonard</u>. The interests of the state and its people in resolving conflicts related to companies located here are the same whether their facilities are located in Morgantown, Charleston or elsewhere. While that interest is substantial in many cases, companies such as Mylan that maintain offices, factories and distribution centers in several states, and distribute their products nationwide, predictably will engage in litigation in many jurisdictions. The citizens of this state, consequently, have less of an interest in hearing a case involving the death of a North Carolina resident than do the people of the state where the decedent lived.

The decedent was prescribed the MFTS in North Carolina, used the product there, and allegedly died there because of it. North Carolina thus has a greater interest than does West Virginia in having this action heard by the judiciary in its state.

### 7. Interest of Justice Generally

Overall, the interest of justice requires that this case be heard in a court with better access to relevant evidence and witnesses, where non-party witnesses will be less inconvenienced, and where the local citizens have a stronger interest in the case. These considerations are substantial and overcome the presumptively proper venue chosen by Locklear.

## V. CONCLUSION

For the reasons discussed, the Court **GRANTS** the motion (dkt. 29) to transfer this case to the Eastern District of North Carolina, and **DENIES** Mylan's motion to vacate or amend the scheduling order (dkt. 42) on its merits, not only because it is now moot, but also because Mylan has a continuing duty to engage in discovery in good faith, regardless of the pendency of any motion.

It is so **ORDERED**.

The Court directs the Clerk to forward a copy of this Order to counsel of record, and to the Clerk of the United States District Court for the Eastern District of North Carolina, and to remove this case from the active docket.

DATED: August 1, 2011.

/s/ Irene M. Keeley  
IRENE M. KEELEY  
UNITED STATES DISTRICT JUDGE